## SOUTHERN RAILWAY COMPANY *v.* WILLIAMS.

1. While proof of the cost of an article or thing is not the criterion of its value, yet such evidence is admissible as a circumstance in an inquiry instituted to ascertain that value.
2. Whether a house was set on fire by sparks emitted from a locomotive, and whether the railroad company was negligent as to the proper equipment of the locomotive, and whether it was handled in such a negligent manner as to cause the fire, were questions of fact for determination by the jury ; and when there is evidence from which these questions may be affirmatively determined, their verdict so finding will not be disturbed. There was evidence in the cases at bar which supported the finding against the railroad company.

Argued April 3, — Decided April 26, 1901.

Actions for damages. Before Judge Fite. Whitfield superior court. December 3, 1900.

*Shumate & Maddox,* for plaintiff in error.
*Hoke Smith & H. C. Peeples* and *Jones & Martin,* contra.

LITTLE, J.  Zoula Williams instituted an action against the Southern Railway Company, to recover damages which she alleged she sustained by the burning of a hotel building and its contents at Cohutta in Whitfield county. It is alleged that the fire was caused by sparks emitted from an engine in use by the defendant railway company, the railroad track of defendant being within a short distance of the hotel building. W. L. Williams also brought an action against the railroad company, to recover the value of cer-

tain goods which he alleged belonged to him, and which were in an outhouse on the premises whereon was situated the building for the burning of which Zoula Williams had brought suit, the allegations being that these goods were consumed by the fire caused by sparks emitted from a locomotive in use by the defendant company. Each of these plaintiffs obtained a verdict against the railroad company, and the latter submitted motions for a new trial, which were overruled, and it excepted. In defense of these actions the company denied that the fire originated from the cause alleged, and denied further that the respective plaintiffs were damaged in the amounts claimed. The two cases were argued together. In the case of W. L. Williams the grounds of the motion for a new trial were that the verdict was contrary to the law and against the evidence, and was excessive; while in the case of Zoula Williams the same grounds were relied on, with the additional assignment that the court erred in permitting evidence to be introduced, · over the objection of the defendant, to show what Mrs. Williams paid for the property, the objection being that what the property cost was not admissible to show its value at the time it was destroyed. There was no error in the admission of this evidence. In ascertaining the amount which the plaintiffs would respectively be entitled to recover if the evidence supported a verdict in their favor, the cash value of the property destroyed at the time of the burning was to be determined. While the amount that the property cost when purchased was not the absolute, and possibly not an approximate, criterion of this value, yet it was one element and circumstance in relation to value which could properly go to the jury to be considered with the other evidence in determining value. Presumably what an article cost at the time of its purchase was its value; likewise evidence would be admissible to show in this connection that a party paid more than its value for it. Again, it might be shown that since its purchase it had deteriorated in value from many causes. But notwithstanding these things its cost is a circumstance the proof of which can go to the jury, not as proving value even sufficiently to authorize a recovery, but as a fact relating to the value; and we are of the opinion that the objection to the admission of this testimony was not well taken. *Watson* v. *Loughran*, 112 *Ga.* 837; *Allen* v. *Harris*, 113 *Ga.* 107.

We are not prepared to say that the verdict in this case was

contrary to the evidence.    It is a matter of some doubt whether fire was in fact communicated to the building from sparks emitted from the locomotive of the defendant.    Perhaps the preponderance of the evidence would lead to the belief that it was.    In the case of *Gainesville R. Co.* v. *Edmondson*, 101 *Ga.* 751, this court said: "It is always incumbent on the plaintiff to make proof that the fire was communicated by the locomotive of the defendant.    But few cases will occur, however, where the fact that the fire was communicated is susceptible of direct proof.    Consequently such proof must be more or less circumstantial.    The evidence, however, must be sufficient to establish a reasonable inference that the fire originated from sparks or fire emitted or thrown out by the locomotives of the company."    The evidence in this case that the fire was thus communicated is entirely circumstantial.    It was shown that the building was near the point on the railroad track where the engine stopped.    Some of the witnesses testified that the wind at the time was coming from the direction of the point where the engine had stopped, and others that the engine emitted sparks of fire on that day, and that it was with some effort that the train started after it had stopped.    It appeared to one witness that it was trying to start and could not, and that the wheels were sliding, and that the engine made several attempts before it got off, and that the sparks which were emitted from the locomotive were alive, one witness testifying that a spark fell down his collar and burned him.    Again, it was shown to have been very dry weather at the time.    About fifteen or twenty minutes after the train left, fire was discovered on the roof of the hotel.    While circumstantial, although there was a contest as to the facts, this evidence was, we think, sufficient to authorize the jury to determine that the house was fired by sparks emitted from the engine.    This, as was said in the *Edmondson* case cited above, is not sufficient of itself to authorize a recovery, because modern science and ingenuity have not yet reached a point where it is possible to propel locomotives by the use of steam in such a manner as to absolutely prevent the emission of sparks of fire in their operation; and in order to recover, the fire must have been occasioned by some act of negligence on the part of the agents of the company, and this negligence refers either to the condition of the locomotive from which the fire originated or to its handling and management at the time the fire was

occasioned.    As to whether 'the company was negligent or not was, of course, a question of fact; and while it was shown by certain witnesses of the company that the spark-arrester attached to the engine from which it was claimed that the fire was emitted was in first-class condition, and while other witnesses testified to the proper handling of the locomotive, it was also in evidence that the engine "was exhausting" as it started off, and that large hot cinders were emitted, which must have passed through the spark-arrester.    The engineer who was in charge of the locomotive the day the house was burned testified, that it was the "exhaust" that lifts the sparks out of the box against the netting; that if cinders of a sufficient size to set fire to a building some sixty or eighty feet away were emitted, the spark-arrester was in doubtful condition; and that if the cinders which escaped through the spark-arrester retained life enough to burn people one hundred feet away, he would not think that the arrester was in good condition.    The circumstances which in the opinion of this witness would cause doubt to be thrown upon the condition of the arrester were testified to by some of the witnesses sworn in these cases; and taken all together, we can not rule as a matter of law that the evidence demanded a finding that there was no negligence in the construction and maintenance of the spark-arrester, and in the handling of the engine on that particular occasion.    We are free to say that the evidence greatly preponderated in favor of the conclusion that there was no negligence; but when it was shown that cinders of a large size and capable of setting fire to a house at some distance from the track were emitted, and the exhaust, which is the prime cause of the emission of sparks, was used when there was no occasion for it to be done, the question of negligence was in issue, and therefore for the determination of the jury; and they having concluded these questions against the company, we will not disturb their verdict.    While under the evidence the amounts returned seem to be large, there was evidence which authorized the findings.    The court, therefore, did not err in overruling the motion for new trial.

*Judgment affirmed.    All the Justices concurring, except Lewis, J., absent.*