## SOUTHERN RAILWAY COMPANY *v.* ELLIOTT.

The evidence was sufficient to support the verdict, and there was no error in refusing to grant a new trial upon the general grounds contained in the motion, that the verdict was contrary to law, to evidence, and without evidence to support it, etc.

Argued June 24,—Decided December 21, 1907.

Action for damages. Before Judge Reagan. Henry superior court. December 18, 1906.

Elliott sued the railroad company for damages caused by the burning of certain cotton which was stored in a warehouse located in the town of Stockbridge, near the railroad track of the defendant. The grounds of negligence alleged were, that the servants of the railroad company in charge of the train negligently caused and permitted the engine to emit large quantities of sparks, fire cinders, and other combustible matter, as it passed the warehouse, and the sparks so emitted were blown into the warehouse and thereby caused the fire; that the defendant railroad company negligently failed to equip its engine with any sufficient spark-arresting apparatus; and that the fireman and other employees of the defendant were negligently and carelessly firing said engine as it passed the ware-

house. On the trial a verdict was rendered for the plaintiff. A motion for new trial was made on the four usual general grounds, that the verdict was contrary to law, contrary to evidence, without evidence to support it, etc. There were no other grounds. The judge overruled the motion, and the defendant excepted. There was much conflict of evidence; but from the plaintiff's standpoint there was evidence substantially to the following effect. His cotton was stored in a warehouse constructed of corrugated iron and painted. Its surface dimensions were 50 by 100 feet, and lengthwise extended parallel with the railroad, which at that point ran north and south. Upon the railroad there were three tracks, two side-tracks and main line. The main line ran between the side-tracks. The railroad was immediately to the east of the building. Immediately to the north of the building was a street which crossed the railroad and passed by the north end of the warehouse. Immediately to the west of the warehouse was another street which ran parallel with the railroad, thus placing the warehouse between this street and the railroad. A few feet to the south of the warehouse was a seed-house. On the east side of the warehouse were two doors and one window opening upon a small platform which extended out to a line parallel with and about two feet from the side-track. Just beyond the side-track was the main line of the railroad, which was about 18 or 20 feet from the east side of the warehouse. In the north end of the warehouse was one glass window from which a pane was missing, thus leaving an open entrance of dimensions about 12 by 18 inches into the warehouse. On the west side were two windows and two doors. On the south side there were two windows. In the warehouse were stored large quantities of cotton, both baled and loose, some of which was "lined up" close to the aperture left by the missing pane from the window in the north end of the building. The cotton was very inflammable. Across the street and opposite the northwest corner of the warehouse was a store and negro dwelling-house. Across the street from and just opposite the southwest corner of the warehouse, there was a gin-house. The railroad depot was south of the warehouse and about 250 feet therefrom. The summit of a grade in the railroad track was about opposite the depot, and from that point it was down grade in both directions. About 11:30 o'clock on the night of September 9, 1905, the warehouse was found to be on fire,

burning from within, and was destroyed with its contents, including the plaintiffs' cotton. A few minutes before the fire was discovered, a freight-train of the defendant, containing about fourteen cars, had run along the main line, going north through the town, without stopping. It passed the warehouse and went around the curve and continued to the station known as Ellenwood, a distance of about half a mile, and there stopped. There is a sharp conflict of evidence as to whether the engine was working steam and emitting sparks; but there was evidence to the effect that the engine was working steam hard and that sparks were being emitted in large quantities, sparks as large as the little finger, going forty feet high; that sparks were being so emitted all along as the engine passed the warehouse and until it passed around the curve out of sight. The wind was very slight, but was blowing from the northeast and in such manner as tended to blow the sparks on to the warehouse as the engine passed by. The engine would be a distance of from 60 to 200 feet from the warehouse at the times it would be in position for sparks emitted to be blown into the warehouse through the opening in the window at the north end. All other windows and doors were closed and it was very improbable that sparks could have entered elsewhere than through the north window. There had been no other fire in the warehouse or near the same for several hours. The gin had been operated during the day, but the fire in the engine used at the ginnery had been put out about dark on that afternoon. There was considerable grease, machinery, and combustible matter about the gin. The gin was not burned during the conflagration. If the wind had blown sparks from the gin in any direction, as it was coming from the northeast, it would have blown them away from the warehouse. A few minutes before the train came along, the town marshal, who was night watchman, was at the warehouse, and saw no sign of smoke or fire or loafing or other suspicious circumstances. The marshal left and went up the street about 150 or 200 yards, and was sitting in front of the store when he discovered the fire. The train had in the meantime passed. Dr. Hightower and a friend passed the warehouse and met the marshal before he went up the street. The doctor had crossed the railroad at the public crossing at the north end of the warehouse, and had gone down to a livery stable. As he passed the northwest corner of the warehouse, he

thought he detected the odor of grease or a hot box. He saw no smoke or fire. On his return in a few minutes he did not notice the odor. He with his friend, recrossed the railroad track and proceeded to his home near by, and the train passed while they were on their way. In a short time after the train passed, about 15 minutes, the fire was discovered. The fire was altogether within the building. Owing to the density of the smoke and heat from within, it was never possible to tell in what part of the building the fire originated, but it first broke out of the building on the northwest side about 20 or 25 feet from the window with the missing pane. After the train passed and stopped at Ellenwood, the engineer saw the reflection and reported it to the dispatcher, giving as his reason therefor that he feared that the railroad property was being damaged. He was ordered back, and returned to the scene of the conflagration. The spark-arresters used on his engine were of the "standard" kind in general use on the Southern Railway. Inspectors testified that they had examined the spark-arrester on the day of the fire, and on several days immediately preceding and on several days immediately succeeding the date of the fire, and that they were in good order at the time of each examination. The engineer and the fireman both testified that if in fact sparks were emitted forty feet high, the spark-arresters would not be in good condition.

*Charlton E. Battle,* for plaintiff in error.

*Reuben R. Arnold* and *E. M. Smith,* contra.

ATKINSON, J. Under the rulings in the cases of *Southern Ry. Co.* v. *Herrington,* 128 *Ga.* 438 (57 S. E. 694), *Southern Ry. Co.* v. *Williams,* 113 *Ga.* 335 (38 S. E. 744), and *Central Ry. Co.* v. *Trammell,* 114 *Ga.* 312 (40 S. E. 259), the evidence in the case now under consideration was sufficient to support a finding by the jury that the fire which destroyed the plaintiff's cotton was caused by sparks emitted from the defendant's engine, while being operated by its servants in the regular course of their duty and while passing the warehouse in which the cotton was stored. Proof that the injury was caused by sparks emitted from the engine of the defendant while operated by its servants in the conduct of its business raised a presumption of negligence against the defendant. *Gainesville R. Co.* v. *Edmondson,* 101 *Ga.* 747 (29 S. E. 212). But it is contended that this presumption was overcome by the defendant

by proof that the engine was properly equipped with spark-arresters, and that the engine was properly handled so as to avoid the emission of sparks. To meet this contention by the defendant, there was testimony both by the engineer and fireman in charge of the train, to the effect, that, if sparks were in fact emitted by the engine and blown up forty feet high, the spark-arrester would not be in good condition; that no such thing could occur if the spark-arrester was in good condition. There was also testimony of another witness, to the effect that he saw the engine as it passed the warehouse, and that all along by the warehouse and until it passed around the curve and out of sight the engine was in fact emitting sparks forty feet high. Under these circumstances, the jury was authorized to find that the engine was not properly equipped. Upon this point the facts last stated bring the case under the ruling in *Southern Ry. Co.* v. *Herrington, Southern Ry. Co.* v. *Williams,* and *Central Ry. Co.* v. *Trammell,* supra, and distinguish it from *Southern Ry. Co.* v. *Pace,* 114 *Ga.* 712 (40 S. E. 723), *Southern Ry. Co.* v. *Horine,* 115 *Ga.* 664 (42 S. E. 52), *Ala. Midland Ry. Co.* v. *Swindell,* 117 *Ga.* 883 (45 S. E. 264), *Gainesville R. Co.* v. *Edmondson,* supra, *Fla. R. Co.* v. *Rudulph,* 113 *Ga.* 143 (38 S. E. 328), and *Georgia R. Co.* v. *Wall,* 80 *Ga.* 202 (7 S. E. 639). Under the authorities herein cited, the evidence in this case, upon every point, was sufficient to support the verdict in favor of the plaintiff.

*Judgment affirmed. All the Justices concur, except Holden, J., who did not preside.*