### 17383. COLLINS & GLENNVILLE RAILROAD CO. *v.* BEASLEY.

1. In this action against a carrier to recover for damage to property, alleged to have been done in transit, the evidence authorized the inference that the damage was sustained en route, and from a cause for which the carrier was responsible.
2. There was some evidence of what would have been the value of the goods at the destination had they arrived in good condition, and of what was their value in their damaged condition.
3. The amount of the verdict was not in excess of the damages proved by the evidence. The court did not err in refusing the defendant's motion for a new trial.

    DECIDED DECEMBER 20, 1926.

Damages; from city court of Reidsville—Judge Lanier presiding. April 2, 1926.

*Lawton & Cunningham,* for plaintiff in error.

*H. C. Beasley,* contra.

BELL, J. This was an action by F. L. Beasley against Collins & Glennville Railroad Company, the initial carrier, for damage to

Carriers, 10 C. J. p. 389, n. 94, 4; p. 390, n. 15.

Evidence, 22 C. J. p. 183, n. 12; p. 184, n. 43; p. 187, n. 96 New, 10; 23 C. J. p. 57, n. 51; p. 59, n. 22.

Trial, 38 Cyc. p. 1518, n. 69; p. 1521, n. 84, 85; p. 1838, n. 2.

 16

a carload of sweet potatoes shipped by Beasley from Glennville, Georgia, to D. Canale & Company Inc., at Memphis, Tennessee. The petition alleged that the weight of the potatoes was 33,000 pounds, and that their value was $666.60; that when the potatoes arrived at destination they had been damaged by freezing; that they were sold for $202.40, just enough to pay the freight and brokerage charges, and therefore that the plaintiff received nothing from the shipment. The bill of lading specified that the vents of the car in which the potatoes were shipped were open at the time, but were to be closed in case of freezing temperature. The allegation was that the potatoes were damaged by the negligence of the railroad company in failing to close the vents as required by the bill of lading. The prayer was to recover $666.60. The jury found for the plaintiff $533.28. The defendant excepts to the refusal of its motion for a new trial.

The motion for a new trial contained only the usual general grounds and one special ground making a contention which had previously been made in a motion for nonsuit. Counsel for the plaintiff in error seek reversal of the judgment refusing a new trial upon only three grounds; to which we will refer in the opinion below:

1. The first contention of the plaintiff in error is that the evidence showed without dispute that the potatoes could not have been frozen in transit. Evidence was introduced to show that the potatoes were examined at the various points along the route several times during each day from the time of their departure from Glennville until their arrival at their destination and tender to the consignee, and that at no time during this period were they exposed to freezing temperature. However, G. W. Glass, of a firm of brokers in Memphis, who examined the potatoes upon their arrival at Memphis, testified: "I first saw the shipment on December 15th and examined it on that date, when practically all of the potatoes were frozen. The freezing was uniform throughout the car; the potatoes [were] frozen at the sides of the car and at the ends. I do not know whether they were frozen in transit or before they were shipped; however, they were frozen when they arrived in Memphis; . . when we examined them on arrival they were frozen. The vents were not closed on arrival, nor were the ventilator doors." "If the vents had been closed it

is not likely that the shipment would have been frozen when it reached Memphis." "I have been in the produce business twenty-five years, handling sweet potatoes." The plaintiff testified that the potatoes were delivered to the carrier at Glennville in good condition. The shipment was on the road about five days.

It will be seen from the above that the evidence was in conflict as to whether the potatoes were frozen while in the charge of the carrier. The jury were authorized to find against the carrier upon this issue, and also upon the issue as to whether the damage to the potatoes was due to the failure of the carrier to close the vents as required by the bill of lading.

2.  Counsel contend that the verdict is unsupported because, as they insist, there was no evidence of what would have been the market value of the potatoes at destination had they arrived in good condition, nor of their market value in their actual damaged condition. The plaintiff testified that he had sold the potatoes to D. Canale & Co. for $666.60, f. o. b. Glennville, Georgia, the consignee to pay freight and other charges. The consignee refused the potatoes because of their damaged condition, and they were resold in Memphis to the highest bidder, for $202.40. As a general rule, the selling price of an article, though relevant upon the question, is not, when standing alone, sufficient to establish market value. *Watson* v. *Loughran,* 112 *Ga.* 837 (3) (38 S. E. 82) ; *Lott* v. *Banks,* 21 *Ga. App.* 246 (4) (94 S. E. 322) ; *Allen* v. *Harris,* 113 *Ga.* 107 (4) (38 S. E. 322) ; *So. Ry. Co.* v. *Williams,* 113 *Ga.* 335 (1) (38 S. E. 744). The invoice price of the potatoes in question was shown by the plaintiff to be $666.60, f. o. b. Glennville. This fact, with the other facts in evidence, was sufficient to authorize the jury to determine the market value of the potatoes at Memphis at the termination of the shipment. This court will take judicial cognizance that sweet potatoes are a staple food product in this State, and the jury trying this case could have known the same without proof. The witness Glass, a resident of Memphis, who had been in the brokerage business for many years, testified that he had been handling potatoes in his business for 25 years. From this evidence and from what we also know of potatoes in this State, it may be inferred that they are a staple food product also in the city of Memphis. This does not mean, of course, that their value

does not widely fluctuate; but the fact that a dealer in Memphis purchases a carload of potatoes at a certain price, f. o. b. Glennville, Georgia, as the plaintiff testified was done in this case, is some evidence of a market value in Memphis, equal to the price promised, plus freight. Compare *Atlantic Coast Line R. Co.* v. *Stovall Co.,* 30 *Ga. App.* 326 (5) (118 S. E. 62). Again, the witness Glass testified that if the potatoes had arrived in Memphis in good condition, the shipper could have gotten the invoice price less freight and expenses, leaving a balance of $464.20. This testimony did not necessarily refer to the shipper's contract with the consignee, but might have been understood by the jury as indicating a general market value. The shipper had a contract, and there was no necessity for an opinion as to what he might have received for the potatoes from the consignee if they had arrived in good order. So much for the evidence as to what would have been the market value of the potatoes in Memphis in good condition. Now, as to whether there was proof of their market value at that place in their damaged condition: The market value of a staple product in good condition at a given time and place is a circumstance to be considered in determining the market value of such commodity at the same time and place in bad condition. These potatoes were disposed of in a city where, as we have seen, there was a market for potatoes. Glass, the broker who represented the shipper, testified to having had twenty-five years in the handling, that is, the selling of potatoes. He further testified that practically all of the potatoes were frozen. He then sold the potatoes "to the highest bidder" for $202.40. We think there was ample evidence to show what would have been the value of the potatoes in good condition, and what was their value in bad condition. See, in this connection, *Atlantic Coast Line R. Co.* v. *Harris,* 1 *Ga. App.* 667 (57 S. E. 1030); *Morrow Transfer Co.* v. *Robinson,* 8 *Ga. App.* 409 (1) (69 S. E. 317); *American Express Co.* v. *Dubois,* 28 *Ga. App.* 274 (2) (111 S. E. 70); *Harley Hardware Co.* v. *Lafond Co.,* 28 *Ga. App.* 584 (7) (112 S. E. 394); *Rome R. Co.* v. *Sloan,* 39 *Ga.* 635 (4); *Kraft* v. *Rowland,* 33 *Ga. App.* 806 (3) (128 S. E. 812); *Strachan Co.* v. *Hazlip-Hood Co.,* 161 *Ga.* 480 (131 S. E. 283, 286).

3. A further contention which is made in behalf of the plain-

tiff in error is that, assuming the plaintiff's right to recover, the verdict in his favor is excessive. It is pointed out that the verdict was just twenty per cent. less than the amount sued for and it is suggested that under any view of the evidence there is no justification for such a verdict. Counsel observe, that, while witnesses for the defendant testified that only about 20% of the potatoes were damaged, the jury, instead of finding a verdict of 20% of the amount sued for, "simply took off 20%." The jury were not required to believe either of the defendant's witnesses as to the percentage of the damage. It was in their province to accept the testimony of the plaintiff's witness Glass to the effect that "practically all of the potatoes were frozen." If they had further believed, from the testimony of Glass, that the market of the potatoes in good condition in Memphis would have been $666.60, less freight and expenses, they could have found for the plaintiff for an amount not exceeding $464.20, and the verdict as returned would have been excessive. But in seeking to arrive at a just conclusion upon disputed issues of fact, the jury may believe a part of the testimony of a witness or witnesses and reject other parts thereof. *Sappington* v. *Bell,* 115 *Ga.* 856 (42 S. E. 233) ; *Reaves* v. *Columbus Co.,* 32 *Ga. App.* 140 (4) (122 S. E. 824). It was, therefore, legitimate for the jury, upon the point last mentioned, to believe the plaintiff Beasley to the effect that he had sold the potatoes to D. Canale & Company for $666.60, f. o. b. Glennville, Georgia, and from this testimony and the other facts and circumstances referred to in the preceding division of this opinion, to conclude that the difference between what would have been the market value of the potatoes in Memphis in good condition and what was their value in their damaged condition was the amount stated in the verdict rendered by them. We are unable to agree that the verdict is illegal for any of the reasons urged, and therefore hold that the court did not err in refusing a new trial.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*