34842. ATLANTIC COAST LINE RAILROAD COMPANY
*et al. v.* MARSHALL.

DECIDED JANUARY 14, 1954—ADHERED TO ON REHEARING FEBRUARY 27, 1954.

742

*Peacock, Perry & Kelley, Jesse W. Walters,* for plaintiff in error.

*Burt & Burt, Hilliard Burt,* contra.

*R. W. Reynolds,* amicus curiae.

FELTON, J. ■ The court did not err in overruling the general

demurrer to the petition. Under repeated rulings of this court, this court cannot say that the sole proximate cause of the collision was the negligence of the driver of the automobile in which the plaintiff was riding, in failing by the exercise of ordinary care to discover and avoid the consequences of whatever negligence the defendants were guilty of, in view of the allegation of impaired visibility at the time of the collision (*Georgia Northern R. Co.* v. *Stains,* 88 *Ga. App.* 6, 75 S. E. 2d 833, and cases cited), or that the sole proximate cause was the failure of the driver to exercise ordinary care before the alleged negligence of the defendants was discovered or should have been discovered.

■ The court erred in denying the motion for a new trial on the general grounds, because the evidence did not authorize a finding that the defendant was negligent in any particular which contributed to the plaintiff's injuries. The *mere act* of stopping railroad cars on a crossing for such a length of time as might be reasonably necessary in the conduct of the railroad's business would not constitute negligence on the part of the defendants. Other facts must be shown, to place on a railroad and its employees the duty to give the traveling public warnings of the presence of the train on the crossing, in addition to that which is given by the train itself. *Mann* v. *Central of Ga. Ry. Co.,* 43 *Ga. App.* 708 (160 S. E. 131); *Gay* v. *Smith,* 51 *Ga. App.* 615 (181 S. E. 129). In this case the only other fact relied on to impose the additional duty on the part of the defendants was the presence of fog, smoke, and extreme darkness in the atmosphere. It is conceded by the defendant in error, and correctly so, that the factor of fog and smoke is necessary to establish liability in this case, and the decisions are clear and numerous on this question. *Georgia Northern R. Co.* v. *Stains,* supra, and cases cited. See also *Brinson* v. *Davis,* 32 *Ga. App.* 37 (122 S. E. 643). Georgia law requires headlights on motor vehicles operated on the public streets or highways which will illuminate 500 feet. Code (Ann. Supp.) § 68-316. In order to establish liability in this case, it was necessary for the plaintiff to prove by competent testimony that the fog and smoke impaired the driver's visibility to such an extent that he did not have clear vision for 500 feet, otherwise the fog or smoke would not have been a material factor. The evidence in this case failed to

show to what extent visibility of the driver was impaired, which left the question of liability one of mere conjecture. No witness testified as to the extent of the impairment of the driver's visibility, either directly or by proof of circumstances from which a conclusion could be legitimately drawn. On the question of visibility, the driver testified that, when he started around the car in front of him, he ran into "a kind of haze" and that it was an extremely dark night. Another witness testified that it was "pretty smoky or foggy and it was hazy in the dark"; another, that it was a dark night; another, that it was cold and damp, foggy and dark; another, that it was more or less hazy, that it was more or less dark and foggy or smoky-looking in the open field to the right where the asphalt plant was; another, that it looked more or less like a haze or fog or something of that sort settling in the open land; another, that there was a haze up and down the road; another, that they saw a haze or smoke or fog all up and down the road, but that he would not say it was concentrated on this crossing; another, that the atmosphere seemed to be hazy in the vicinity of the train. (Other witnesses testified that there was no fog or smoke and that visibility was not restricted.) The driver of the automobile in which the plaintiff was riding testified that he was following the car in front, running at the rate of forty miles per hour, that in passing the automobile in front he increased his speed to fifty miles per hour, and that it required a distance of 1,200 feet to pass the automobile. He testified that, when he had passed the automobile and started back into the right-hand lane of the road, he turned on his bright lights and could see the box car across the road from 125 to 130 feet. It would be well to emphasize the fact that the driver did not testify as to the degree of impairment of visibility, but simply stated how far ahead of him the train was when he turned on his bright lights. Since the evidence was insufficient to authorize a finding that the defendants were negligent in failing to warn the public of the presence of the train or the crossing in some manner other than that of the train itself, the court erred in denying the motion for a new trial on the general grounds for the reasons stated. No other question raised by the general grounds is considered or decided.

■ The court deems it unnecessary to pass on the special grounds.

The court did not err in overruling the general demurrer to the petition.

The court erred in denying the motion for a new trial on the general grounds.

*Judgment on demurrer affirmed; judgment on the motion for a new trial reversed. Sutton, C. J., and Quillian, J., concur.*

### ON REHEARING.

The very vigorous motion for a rehearing challenges the court's original conclusion and complains of its failure to set forth the evidence in more detail. Another point urged is that the court overlooked the law to the effect that the failure of a driver to be able to stop within the range of his vision is not as a matter of law such negligence as to bar a recovery by him, which would mean that the driver's negligence in so acting was in law the sole proximate cause of the driver's injuries, or the injuries of the guests of the driver. We did not overlook this rule of law. Before we ever get to the application of the doctrine of comparative negligence, the question whether any actionable negligence of the defendant has been shown has to be disposed of. In this case we concluded that no actionable negligence was shown, and it was not necessary to consider comparative negligence. We did not think it necessary to quote more in detail from the evidence. The entire evidence shows that the case was not tried on the theory that the driver of the automobile could not see the box car at a distance of 500 feet or less because of the existence of the condition of the atmosphere or for any other reason. We have carefully and thoroughly reviewed the evidence, and to avoid being accused of dodging the issue we shall discuss it in detail.

■ Movant contends that the evidence authorizes the finding that Clements, the driver of the vehicle in which the plaintiff was riding, turned on his bright lights when he was more than 500 feet from the crossing. This contention is based on the testimony of Straight, one of the defendants' witnesses, the driver of the vehicle which Clements passed. Straight testified that Clements passed him and was 200 feet in front of him when he saw Clements' brake lights come on. Clements testified that as he started to pass the Straight car, and when he got where his bright lights would not blind Straight, he put on his bright lights, and that, when he turned on his bright lights, he saw something

in front of him (he could not tell what it was) and put on brakes and started slacking off; that about the hood of his car was passing Straight's car when he flashed on his bright lights; that he saw the train 125 to 130 feet away; that he was coming back on his side of the road and was just a little over half way the center line. The only reasonable interpretation of Clement's testimony is that he saw something ahead immediately after he turned on his bright lights. There is no dispute in the testimony as to how far Clements was from the train when he turned on his bright lights. Clements said the distance was 125 to 130 feet. If the jury believed Straight and believed that Clements applied his brakes after he had passed Straight, instead of applying them as he was passing, such a conclusion would not have affected the fact that when Clements did apply his brakes he was 125 to 130 feet from the train, and that he turned on his bright lights and immediately applied his brakes. We do not believe that the inference was warranted that Clements turned on his bright lights as he was passing the Straight car, and that he applied his brakes after he had passed the Straight car and had reached a point about 200 feet ahead of it.

■ The jury was not authorized to find that Clements could not have seen the box car at a distance of 500 feet or less by reason of the fact that, when Clements was passing the Straight car, he had the benefit of Straight's bright lights. Straight testified that he did not remember whether he had his bright lights on. In view of this fact, as well as others, this court will not presume or say that the jury could infer that Straight's bright lights were on. If we presumed under such circumstances that all were obeying the law, the defendant would be automatically exonerated. Besides, Clements did not testify that he could not see the train for 500 feet or less because of the fog, haze, etc. He merely stated that he did not see it until 130 feet away. His attention may have been directed toward passing the car in front and not on the road ahead.

■ The testimony of Eldridge A. Shaw did not warrant the inference that he could not have seen the train for 500 feet or less by reason of the condition of the atmosphere. He testified: "Well, the atmosphere was more or less hazy. Well, it was more or less dark and foggy or smoky-looking in the open field to the

right there where the asphalt plant was. Pointing out on this diagram or map, this is the asphalt plant right here, and this is open land in here, and back through here is the open land and more or less it looked to me like there was a haze that was settling in that vicinity. Q. What about on the road, the road you traveled up to the crossing, this is south, this is north, and this is Mock Road and this is the track along here? A. Well, this is the crossing here and right along in here is the vicinity where there isn't anything at all, nothing, or there wasn't at that time ·and, approaching from here, an automobile with its lights . throwed a gleam or haze on the crossing. I was approximately 300 feet from the crossing before I saw the box car on the crossing. I don't have any idea whether this haze I speak of could have come from the smoke of these Diesel engines. At to whether that was pretty well distributed over the area from my house down to this crossing, well, as I said before, it looked more or less like a haze or fog or something of that sort settling in this vicinity here, in that open land over there, and I didn't notice it until I got down there and, with the glare of the lights on it, I saw it; far as seeing it at my house, I don't know. Q. You don't know whether that haze was enough to restrict the visibility, do you, sir? A. I wouldn't say that, sir. I wouldn't say it would or would not, sir. I drove my automobile down there, and I had no trouble seeing in plenty of time to stop. I didn't run over no cars.· I pulled in behind them and stopped."

■ Neither did the testimony of Barney J. Akridge authorize a finding that the driver of a car could not have seen the train for 500 feet or less by reason of the condition of the atmosphere. He testified: "It was a dark night and foggy and smoky. As to whether it was smoke or fog I observed there, well, it was more or less smoky and foggy. It was all about the Mock Road there. As to what about up and down the road, was there any haze there, yes, sir, it was practically the same up and down the road. I would say I was approximately a 150 feet, just guessing, from the crossing before I could see it. I was sitting in the back seat and Mr. Dunn and his wife were in the front seat. I don't think I would be able to see as well as Mr. Dunn on that occasion. This smoke I have talked about, I don't know where it came from. I don't know whether it was coming from these

Diesel engines. As I remember it, we were seeing that haze or smoke or fog all up and down the road. I wouldn't say it was concentrated on this crossing."

▪ ■ Neither did the testimony of Paul F. Dunn authorize a finding that he, while driving a car that night, could not see the train at a distance of 500 feet or less because of the condition of the atmosphere. He testified: "The atmosphere seemed to be hazy in the vicinity of the train. As to the condition of the weather, it was dark, I think it was about eight o'clock at night. I was driving the car. I was, oh, roughly, 60 yards from the train before I could detect it." To put such a construction on his testimony, would be to put a construction on it that he obviously did not intend. Not all foggy conditions make it impossible to see 500 feet ahead on a dark night.

■ L. E. Cannon's testimony did not authorize such an inference as next above mentioned. He did not purport to give testimony on whether he could or could not see the train at a distance of 500 feet or less with his bright lights on by reason of the fog. He parked his car quite a distance from the crossing and walked to the crossing. His testimony involved only the distance, 150 to 200 feet, from which he could detect the crossing while walking toward it.

■ The same (as next above) can be said of the testimony of George Mock. He testified: "I don't recall how far away from it I was before I could see it. I would imagine I was within a hundred feet of it before I could tell what the situation was. On this night when I walked down there I don't think there was any smoke or fog in the air to hinder my visibility." Even if we omit the last sentence of this testimony, what Mr. Mock stated in the second sentence is a far cry from saying that he could not see the train for over 100 feet. It is entirely too indefinite to base a conclusion on it which would affect legal rights. This witness was also walking and had no intention of stating his ability to see from his automobile with bright lights burning.

■ The mere fact that the elevation at the crossing is 8 feet higher than it is 300 feet away would not in and of itself place a duty on the railroad to give warning, etc., that a train was on the crossing.

██ The train had not been on the crossing over five minutes before the collision.

*Judgment of reversal adhered to on rehearing. Quillian and Nichols, JJ., concur.*