35462.   ATLANTIC COAST LINE RAILROAD COMPANY
*et al. v.* CLEMENTS.

DECIDED JUNE 14, 1955—REHEARING DENIED JULY 26, 1955.

Peacock, Perry, Kelley & Walters, for plaintiffs in error.

Robert W. Reynolds, contra.

QUILLIAN, J. In this opinion the plaintiff in error is referred to as the defendant or railroad company and the defendant in error as the plaintiff.

The motion for a new trial contained the usual general grounds, and eight special grounds.

■ The fourth ground of the motion for a new trial asserts that the court erred in charging the jury: "With respect to the requirements that all motor vehicles must be equipped with lights capable of revealing an object five hundred feet ahead, I charge you the following: It is common knowledge that substantial objects, because of their composition or coloring, and the coloring of the surface or object upon which they rest, are visible in greatly varying degrees when artificial lights are thrown upon them. They are not necessarily clearly visible."

The charge complained of is in the exact language approved by this court in the case of Doby v. W. L. Florence Const. Co., 71 Ga. App. 888 (32 S. E. 2d 527). The Doby case came to this court on exceptions to a judgment of the trial court sustaining a demurrer. We held the language might be pleaded and proved in showing why a motorist did not observe a barricade across the road on which he was traveling. We did not hold that the language was appropriate to be given in charge to the jury.

It has been held that language employed by appellate courts in demonstrating the correctness of their rulings is often argumentative and otherwise objectionable as a charge to the jury. Atlanta & West Point R. Co. v. Hudson, 123 Ga. 108 (51 S. E. 29). For instance it has been held many times by our appellate courts that a railroad track is a place of danger, and that one who goes thereon is bound to know that he is going into a place where he is subject to the dangers incident to the operation of trains upon that track; it is nonetheless error for a trial judge to charge a jury in such language. Western & Atlantic R. Co. v. Ferguson, 113 Ga. 708 (39 S. E. 306, 54 L. R. A. 802); Western & Atlantic R. Co. v. Jarrett, 22 Ga. App. 313 (96 S. E. 17).

Probably in no instance is the rule here referred to more obviously applicable than when an appellate court rules on that which may be pleaded and proved. To hold that some particular matter may be pleaded and proved is certainly not authority that the trial court may in his charge intimate that it has been proved.

One of the vital issues of the instant case was whether the cars on the crossing, or the fog that the plaintiff avers obscured them from his view were of such coloring and composition that the artificial lights of the plaintiff's automobile did not reveal them at a sufficient distance to enable him to bring the automobile to a stop in time to avoid colliding with the train.

We think that the charge excepted to is subject to the criticism that it intimated an opinion that the evidence established either the fog or cars on the crossing on account of their coloring and compositon were not as clearly visible under artificial lights as were other objects.

■ The fifth ground of the amended motion for new trial complains that the court charged in reference to the plaintiff's right to recover damages to his automobile. The complaint is that there was no evidence to warrant the charge.

The purchase price of an automobile is prima facie, but not conclusive evidence, of its value at the time it was purchased. *Nashville, Chattanooga &c. Ry.* v. *Bass*, 32 *Ga. App.* 457 (123 S. E. 729) ; *City of Jeffersonville* v. *Cotton States Belting &c. Co.*, 30 *Ga. App.* 470 (118 S. E. 442). It is always relevant, but, standing alone, is not sufficient as to third parties. *Collins & Glennville R. Co.* v. *Beasley*, 36 *Ga. App.* 241 (136 S. E. 167). We think however, that evidence of price, plus the make, model, length of ownership and amount of use of the automobile by the plaintiff, together with the picture of the vehicle introduced in evidence is sufficient to support a finding by the jury as to market value. A jury is in no event absolutely bound by opinion evidence, and as to everyday objects, such as automobiles, they may draw from their own experience in forming estimates of market value. See Code (Ann.) § 38-1708, catchword "Knowledge."

The point is vigorously pressed that the plaintiff testified that the automobile was worth only $600 before being damaged, and $600 thereafter. The plaintiff had just testified that only a short

time before the collision occurred, he paid $2,900 for the automobile and had driven it 7,000 miles.

A mere slip of the tongue by a witness does not affect the sufficiency of evidence as proof of a particular fact, when the meaning of the testimony is apparent and understandable.

■ The sixth ground of the motion for a new trial complained that the court refused the defendant's timely written request to charge the jury: "Gentlemen of the jury, I charge you that Code § 68-316 of the Georgia Code is in part as follows: 'Every motor vehicle operated on the public streets or highways of the State shall be equipped with two front headlights, located near the side extremities of the front, capable of revealing a person, vehicle or object at least five hundred feet ahead in the darkness.' I charge you further in this connection that the Code section does not distinguish between expected and unexpected objects and that the above Code section requires lights that would reveal unexpected objects at least five hundred feet ahead in the darkness."

· The request presented a sound principle, that was adjusted to the pleadings and proof, and in our opinion should have been given in charge to the jury.

The seventh ground complains that the court charged the jury: "Whether under the circumstances, the driver of this automobile was negligent is a matter for you to determine, under all of the evidence in this case, and, if he was negligent, whether his negligence was the sole proximate cause of this collision." The complaint is not that the charge is not correct, but that other pertinent instructions should have been given to the jury. Under authority of Payne v. Young, 27 Ga. App. 370 (4) (108 S. E. 312), we are constrained to hold the ground is without merit.

■ The eighth ground of the motion for new trial was without merit. It complained that a certain picture of Mock Road at the crossing where the collision occurred was offered in evidence. One of the grounds of negligence alleged in the petition as amended, was: " (h) Plaintiff shows that defendant was negligent in removing the glass reflectors from its signs situated approximately one hundred feet from the crossing, which would have afforded him some notice as to the presence of the train." The picture was offered to show that the sign posted by the railroad company near the crossing was equipped with reflectors when the picture was

taken. There was evidence that at the time of the collision there were no reflectors on the sign.

■ The defendant, plaintiff in error here, abandoned exceptions taken to the judgment overruling its general and special demurrers to the petition.

"Where a general demurrer to a petition is overruled and no exception is taken thereto, the decision becomes the law of the case and it is a conclusive determination that the petition sets out a cause of action. If after the overruling of the demurrer the case proceeds to trial, and the plaintiff substantially proves his case as laid, he is entitled to a verdict in his favor." *Western & Atlantic Railroad* v. *Morgan,* 40 *Ga. App.* 611, 613 (150 S. E. 850).

No exception was taken to the orders allowing two amendments to the petition.

The plaintiff was prima facie entitled to a verdict in his favor if he proved the case as laid in the amended petition, unless facts not revealed by the allegations of the petition, but developed by his proof showed that he was guilty of negligence debarring his right of recovery.

The defendant contends that the plaintiff's evidence did not entitle him to recover in the case for the reason that it disclosed acts on his part amounting to a failure to exercise ordinary care for the protection of his person and preservation of his automobile. These acts of negligence were: (a) that the plaintiff did not observe a railroad crossing sign erected by the State 480 feet from the crossing where the collision occurred; (b) that the plaintiff was aware that there was a railroad crossing in the vicinity upon the road he was traveling and nevertheless continued to travel at a high speed with his vision impaired by fog, mist or smoke; (c) that the plaintiff drove his automobile on the occasion under investigation with lights that did not reveal objects at a distance of 500 feet in violation of Section 68-316 (a) of the Georgia Code. (This section was repealed in 1953, but was in force at the time the instant case arose.)

The plaintiff's testimony was that he did not see the sign posted 90 feet from the crossing because he was at the time following another vehicle and keeping a lookout on the road ahead; and that when he reached the second sign he had seen the train across the road and was endeavoring to bring his automobile to a stop in order to avoid colliding with the train.

Under the facts of this case it was a question for the jury whether the plaintiff's failure to see the signs constituted negligence on his part, if he was negligent, whether his negligence was equal to or exceeded that of the defendant, and whether the failure to observe the signs was the proximate or contributing cause of the collision.

We now consider the contention that the plaintiff's testimony showed a railroad crossing, when, on account of conditions, the visibility was poor.

The plaintiff testified that in the vicinity and on the road he was traveling except at the location of the crossing and for a short distance from the crossing the night was clear, but that when he reached a point between 100 and 150 feet from the crossing he drove into the haze and fog that obscured the crossing from his vision; that the fog had curtained the crossing from his view as he drove along the road and its presence was not discoverable until, to use his own expression, "he was right on it."

While in the order of nature such a condition is rather phenomenal it is not, according to human experience, impossible.

The plaintiff further testified that after he reached the fog he could not stop his automobile in the short distance between the point and the crossing. We are aware and appreciative of the holding of this court that one who heedlessly drives through fog, haze, or smoke assumes the risk arising from his own recklessness. But under the testimony in this case it was for the jury to decide whether the plaintiff could by the exercise of reasonable prudence have ascertained that the fog lay ahead of him on the road in time to avoid driving through it.

The only testimony in reference to the power or range of the plaintiff's automobile lights was the plaintiff's own. He testified that his automobile lights did conform with the requirements of the statute; that when the automobile was standing still they were capable of casting a light that would reveal objects at a distance of 500 feet; that when the automobile was in motion the lights would likewise reveal expected objects 500 feet distant and unexpected objects 250 feet away; that the lights would pick up objects at varying distances according to the speed at which it traveled. Thus the plaintiff's evidence was susceptible to the construction that the automobile's lights would reveal objects at

500 feet under some conditions and only 250 feet under other conditions. However, it is also open to the more rational interpretation that what the witness's testimony referred to was his own capacity as a driver to see expected and unexpected objects at varying distances according to whether the automobile was still or in motion and whether he anticipated their presence or did not expect to see them. This is true for the obvious reason that the automobile could entertain no expectation of objects that might appear in the roadways in which it was driven, and the lights would, as a matter of common sense, illuminate expected and unexpected objects at the same distance.

We think the interpretation of the evidence was for the jury, and even if they construed it as meaning that, under given conditions, the lights of the automobile did not conform to the standards of the statute, it was still for them to determine whether the negligence of the plaintiff in driving was a proximate or contributing cause of the collision in which he was injured and his automobile damaged.

The evidence was in sharp conflict as to whether there was fog of sufficient density in the area of the crossing to make it necessary for the defendant railroad's employees, in order that they act as a reasonable prudent person would in like circumstances, to give warning to the traveling public that the unlighted train was across the highway, whether there was gravel on the approach to the crossing that affected the plaintiff's ability to bring his automobile to a stop before it reached the crossing, as to whether the plaintiff by the exercise of ordinary care could have prevented the collision between his automobile and the train, and as to whether the negligence of the plaintiff and of the defendant caused the collision. There was also evidence as to the extent of the plaintiff's injury.

There was evidence that authorized the finding of a verdict for the amount recovered as compensation to the plaintiff for the physical injuries sustained by him.

The case of *Atlantic Coast Line R. Co.* v. *Marshall*, 89 *Ga. App.* 740 (81 S. E. 2d 228) was one involving the same incident as the instant case. The plaintiff in that case was a passenger in the present plaintiff's automobile and sued for injuries sustained in the collision with the train. We held in that case that

the evidence was not sufficient to sustain the verdict for specific reasons pointed out in the opinion. The evidence in the *Marshall* case followed the same general pattern as the evidence we now review, with notable exceptions. A careful analysis and minute comparison of the respective records of the two cases shows that the proof offered in the present case is different in material particulars from that in the *Marshall* case. In that case we held that the evidence was not sufficient to show to what extent the fog impaired the visibility of the driver. He did not testify as to the density of the fog or that it prevented him from seeing that the train was across the highway. His testimony was that there was "a sort of haze" on the road. In the present case he, the plaintiff, swore that the fog obscured the train from his vision and prevented him from seeing it.

We suggested in the *Marshall* case that the evidence did not show that the fog was in the vicinity of the crossing and that the railroad's employees were not negligent in simply bringing the train to a stop on the crossing. The plaintiff in the present case by his own evidence made it clearly appear that the fog did envelop the crossing.

We pointed out in the *Marshall* case that the driver testified that he passed an automobile preceding him on the road at a point only 135 feet from the crossing when the driver turned his lights from dim to bright, and first observed the train upon the crossing. Here again the opinion read "it would be well to emphasize the fact that the driver did not testify as to the degree of impairment of vision." In the instant case the plaintiff (the same driver) fixed the point at which he turned up his lights at about 150 feet, and positively swore that the fog did affect his visibility to the extent that it prevented him from seeing the train across the highway.

In the *Marshall* case we called attention to the fact that the driver of the car preceding that of·the driver was presumed to drive in obedience to the law with lights capable of revealing the train at a distance of 500 feet, and it could be safely assumed that the driver of the automobile in which the plaintiff Marshall was riding (the plaintiff in this case) could have seen the train across the highway for that distance. The opinion continues "Besides, Clements did not testify that he could not see the train for 500

feet or less because of the fog, haze, etc. He merely stated that he did not see it until 130 feet away. His attention may have been directed toward passing the car in front and not on the road ahead."

In this case the plaintiff unequivocally testified that he could not see the train for four or five hundred feet before approaching the crossing.

Singularly enough with the fullness and precision that an amendment to pleadings meets defects pointed out by a special demurrer, the plaintiff's proof supplied every deficiency in the evidence to which attention was called by the opinion in the *Marshall* case.

No adverse criticism of the plaintiff is intended. His testimony applied to the evidence given by him on the trial of the former case, except as his estimate of distances did not materially conflict with it.

However, had there been a conflict as to every phase of the plaintiff's testimony with evidence given by him when a witness in the *Marshall* case, it would not preclude his right of recovery. It would only affect his credit as a witness. *Scott* v. *Powell Paving Co.*, 43 *Ga. App.* 705 (159 S. E. 895); *Tarbutton* v. *Duggan*, 45 *Ga. App.* 31 (3) (163 S. E. 298).

Incidentally, there were some details that influenced our decision in the previous case that are absent from the record in this case. For instance, the plaintiff testified as a witness on the trial of the former case that the branches of the trees overhanging the road obscured the train from his vision as he approached the crossing, but on the trial of this case no mention of the trees was made.

We have carefully reviewed the motion for a judgment notwithstanding the verdict, and are of the opinion that the trial court committed no error in denying it. What is written in reference to the motion for a judgment notwithstanding the verdict disposes of the general grounds of the motion for a new trial.

*Judgment reversed. Gardner, P. J., Townsend, Carlisle, and Nichols, JJ., concur. Felton, C. J., dissents.*

FELTON, C. J., dissenting. I think the court erred in denying the motion for a judgment notwithstanding the verdict. The testimony of the plaintiff was vague, uncertain and contradictory,

and under the rule in such cases, construing this testimony against him, a verdict against him was demanded. " 'The testimony of a party who offers himself as a witness in his own behalf is to be construed most strongly against him when it is self-contradictory, vague, or equivocal. *W. & A. R. Co.* v. *Evans,* 96 *Ga.* 481 [23 S. E. 494]; *Freyermuth* v. *R. Co.,* 107 *Ga.* 32 [32 S. E. 668]; *Ray* v. *Green,* 113 *Ga.* 920 [39 S. E. 470]; *Farmer* v. *Davenport,* 118 *Ga.* 289 [45 S. E. 244]. And he is not entitled to a finding in his favor if that version of his testimony the most unfavorable to him shows that the verdict should be against him. *Southern Bank* v. *Goette,* 108 *Ga.* 796 [33 S. E. 974].' *Southern Railway Co.* v. *Hobbs,* 121 *Ga.* 428 (49 S. E. 294)." *Davis* v. *Akridge,* 199 *Ga.* 867, 868 (2) (36 S. E. 2d 102). Under our ruling in the *Marshall* case it was incumbent on the plaintiff to prove that he was unable to see the boxcars blocking the crossing for 500 feet or less because of the impairment of his vision by smoke or fog in the atmosphere. He testified at one time that he turned on his bright lights and ran a considerable distance without being able to see the boxcars until he was within 100 to 150 feet of the crossing. At another time he testified that immediately upon turning on his bright lights he saw some object. Taking the last statement as true the evidence is not sufficient to show that the plaintiff would not have been able to see the object if he had turned on his bright lights at a distance of 500 feet or less from the crossing. The plaintiff testified in part: "Q. When did you turn your lights on bright? A. My car, the windshield of my car was about even with the front of the other car. Q. When did you first see an obstruction across the road? A. When I started to pull back on the road—I couldn't tell whether it was a continuation of the highway or not, but it looked as though there was some obstruction of the highway. . . Q. Sergeant Clements, point out on that rough sketch your position when you became aware that something was on the crossing? A. I was somewhere in this vicinity right here, which would throw me approximately a hundred and fifty feet from the crossing, sir. . . Q. What point did you reach on this road before you could see the boxcar, Sergeant Clements? A. Oh, anywhere between a hundred and a hundred and fifty feet, approximately, sir. . . Q. How far did you say you were from the crossing when you

observed the train, Sergeant Clements? A. Approximately a hundred to a hundred and fifty feet, sir. . . Q. So you saw the train immediately upon putting on your bright lights, Sergeant Clements? A. I saw some object."

The loose gravel on or near the crossing was not chargeable against the defendant as negligence. The purpose of Code §§ 94-503 and 94-504 is to require the maintenance of crossings and approaches thereto in such a condition as is "necessary for a traveler to get on and off the crossing safely and conveniently." *Central of Ga. Ry. Co.* v. *Dumas,* 44 *Ga. App.* 152, 154 (8) (160 S. E. 814); *Pollard* v. *Boatwright,* 57 *Ga. App.* 565, 573 (5) (196 S. E. 215); *Atlantic Coast Line R. Co.* v. *Spearman,* 42 *Ga. App.* 536 (1) (156 S. E. 824). The presence of loose gravel on the approaches to the crossing did not render it unsafe and inconvenient for a traveler to get on and off the crossing.