**ATLANTIC COAST LINE RAILROAD COMPANY, Appellant,**

v.

**Mrs. Woodrow SAPP, Mrs. James H. Tyre and Mrs. Leroy Beckham, Sr., Appellees.**

**No. 16425.**

United States Court of Appeals Fifth Circuit.

Nov. 1, 1957.

Rehearing Denied Dec. 24, 1957.

Larry E. Pedrick, Waycross, Ga., L. J. Bennet, Brunswick, Ga., Bennett, Pedrick & Bennett, Waycross, Ga., of counsel, for appellant.

J. H. Highsmith, Baxley, Ga., E. Way Highsmith, Brunswick, Ga., James P.

Mozingo, III, Darlington, S. C., for appellees.

Before HUTCHESON, Chief Judge, and BORAH and CAMERON, Circuit Judges.

BORAH, Circuit Judge.

These are appeals from adverse judgments entered upon jury verdicts in three separate actions brought by appellees to recover damages for the wrongful deaths of their respective sons, Leonard Holmes, Perman Trye, and Leroy Beckham, Jr., which occurred when a 1950 Oldsmobile automobile in which they were riding was driven into a train of freight cars moving across Pyles Marsh Crossing between Brunswick and Jesup, Georgia.

In the complaints it was alleged, among other things, that defendant was guilty of wilful and wanton negligence in that it failed to provide a statutory cross arm sign or other observable sign or warning of the existence of the crossing, and did block the highway without throwing out lighted fusees in conformity with its alleged practice to so warn vehicular traffic of the presence of cars upon the crossing. Defendant denied each of these allegations of negligence and affirmatively pleaded that the negligence of the driver of the automobile and the two passengers in operating the vehicle at an excessive rate of speed and in failing to exercise ordinary care for their own safety was the sole and proximate cause of the collision.

The three cases were consolidated by the court below and a trial by jury was had. At the conclusion of plaintiffs' evidence, defendant moved for and was denied a directed verdict in each case. Whereupon, and after defendant elected not to produce its evidence, the court submitted the action to the jury. Upon return of the jury's verdicts for plaintiffs, defendant unsuccessfully moved for judgments n. o. v. or in the alternative for a new trial, and these appeals followed. The sole question confronting us for decision is whether the District Court erred in denying these motions.

The accident occurred shortly after midnight on the morning of October 26, 1951. At that time, and as they approached the crossing, the three minors, Holmes, Tyre and Beckham, all born and reared in Brunswick, were traveling in a northeasterly direction on U. S. Highway 25 from Brunswick toward Jesup, Georgia. Earlier in the evening, Beckham and Tyre in company with two young girls had driven out this highway to a point beyond Pyles Marsh Crossing and had returned over the same route. One of the girls who on this occasion had driven the automobile for a short period testified that it was in good running condition and that the brakes and headlights were functioning properly. Both girls testified that they encountered some fog on the road that night which they described variously as very foggy, spotty, or in patches, but one of these witnesses was not asked and the other did not recollect whether the weather conditions which they described existed at the crossing in question.

The defendant's track at Pyles Marsh Crossing runs in an east-west direction across Highway 25, and it was admitted by the railroad that it maintained no automatic signals or other warning lights at this crossing, and that no employee of defendant was stationed there to flag or otherwise warn motorists of the presence of defendant's train. However, the evidence, contrary to the allegations of the complaints, does show that an "X" or cross arm sign was located on the Brunswick side of the crossing in conformity with applicable law. It also affirmatively appears that a motorist traveling toward Jesup on Highway 25 would, upon approaching the crossing, have his view from the east obstructed by an embankment, deep underbrush, and trees. But it is equally clear from the testimony that these physical conditions which existed on defendant's right of way would not prevent a motorist's seeing a moving freight train on the crossing directly in front of him and across the highway he was traveling.

The witness Robert W. Rozier, who operated a restaurant which was situated some 150 feet from the intersection of defendant's tracks and Highway 25, testified that he heard the train's warning whistle blow as it approached the crossing from the east. The witness stated that he was then seated in a lighted restaurant dining room looking through a plate glass window and although it was foggy outside he saw not only the approaching engine headlight, but also several of the dark colored freight cars—some high and some low or "gondola" types—as they passed over the crossing. He stated further that he had on prior occasions seen trains pass over the crossing, had seen them throw out fusees, but that he did not see a lighted fusee dropped from the engine on the night in question.

No eyewitness saw the automobile immediately before or when it crashed into the eighty-third car of defendant's ninety-two car freight train, but both Rozier and his twelve year old nephew, Robert Moody, heard the crash, saw sparks fly in the vicinity of the crossing, and a few moments later heard a loud explosion which illuminated the sky some fifty or sixty feet in the air. Following the explosion the train came to a stop. At that time the gondola car which had been struck and derailed by the automobile was a quarter of a mile west of the highway and the automobile was so enmeshed with the railroad car that it was necessary to use a torch to burn away some of the metal in order to remove two of the bodies from the wreckage. Rozier testified that there was some fog around the freight cars after the collision. But the undertaker who came to remove the bodies stated that he did not experience any difficulty because of the weather in driving to the scene of the accident, and his testimony was corroborated by Moody who swore that the patches or streaks of fog which he and his aunt encountered on the road back to Brunswick after the accident was not so dense or hazardous that the automobile in which they rode had to be driven below normal speed.

On this appeal, appellant contends that plaintiffs' evidence wholly failed to show that the railroad company was guilty of any act of negligence the result of which caused the death of the son of either of the plaintiffs, and that under the facts the prima facie presumption statute, Georgia Code, § 94–1108,[1] did not create any inference of negligence which warranted submitting the case to the jury. We agree.

We take it to be fundamental that when a railroad is permitted to be constructed, its operator may lawfully cross roads and streets with its trains just as members of the public may cross the tracks with their vehicles. Driskell v. Powell, 5 Cir., 67 F.2d 484. And it is the common sense rule in Georgia as elsewhere that no warning need be given to a person of prudence of an object plainly visible within the range of the statutory headlight requirements. Atlantic Coast Line Railroad Company v. Kammerer, 5 Cir., 239 F.2d 115, 117. In the instant case the only fact relied on by appellees to impose the additional duty on the part of the railroad to provide a special warning was the alleged presence of fog at the crossing. And to establish liability it was necessary for appellees to prove that the fog was of such density that it impaired the automobile driver's visibility to such an extent that he in the exercise of ordinary care for his own safety could not have seen the train on the crossing in sufficient time to avoid striking it. This they wholly failed to do. Rozier was the only witness who was conversant with the situation as it existed at or about the time of the collision and he from his position in a lighted room was able to see the moving cars go over the crossing at least

---

1. "In all actions against railroad companies for damages done to persons or property, proof of injury inflicted by the running of locomotives or cars of such companies shall be prima facie evidence of the want of reasonable skill and care on the part of the servants of the companies in reference to such injury." Ga. Code, § 94–1108.

150 feet away without the help of any light shining before him as the occupants of the automobile doubtless had, or should have. Thus there was no evidence, either direct or circumstantial, which showed to what extent the visibility of the driver was impaired, which left the question of liability one of mere conjecture. Atlantic Coast Line Railroad Company v. Marshall, 89 Ga.App. 740, 81 S.E.2d 228.

With reference to the railroad's alleged custom of putting out fusees to warn motorists that a train was passing over the crossing, the one witness who testified that he had previously seen fusees burning at the crossing did not explain the conditions existing on those prior occasions. From all that appears the fusees may have been placed there while the train was standing on the crossing, during switching operations, or as a warning to following trains. But be this as it may, we are of the clear opinion that the evidence at the trial does not bring this case within the decision of this Court in the Florida case of Atlanta and St. Andrews Railway Company v. Church, 5 Cir., 212 F.2d 688, 691, as appellees stoutly contend. Nor does Georgia Code, § 38-119 supply the deficiency in appellees' proof. The statute provides that

"Where a party has evidence in his power and within his reach, by which he may repel a claim or charge against him, and omits to produce it, * * * a presumption arises that the charge or claim is well founded; but this presumption may be rebutted."

We think it plain from the Georgia decisions that the statute has no applicability here for the reason that such an inference cannot be drawn where the railroad crew was accounted for and produced in court where they could have been examined by appellees with reference to the alleged custom to protect this crossing with fusees. Davis & Hatcher v. Central Railroad, 75 Ga. 645.

Likewise, and in agreement with appellant, we are of the opinion that the Georgia prima facie presumption statute, Georgia Code, § 94-1108, does not aid appellees in making out a case. While it is true that a plaintiff may make out a prima facie case under this section by showing injury by the running of a train and contenting himself with the aid of the presumptive statute as to negligence on the part of the railroad through its servants,[2] that situation is not here presented. In the case at bar appellees particularized various acts of negligence on the part of the railroad and having adduced some evidence in support thereof the case then stood as to burden of proof no differently from a case against a non-railroad defendant. The burden rested upon appellees to establish their right to recover by a preponderance of the evidence. Conceding, as we must and do, the truth of all of the proof made by appellees, no imputation of negligence was cast upon the railroad for the statute only supplies an inference of liability "in the absence of other evidence contradicting such inference." Mobile, J. & K. C. R. R. v. Turnipseed, 219 U.S. 35, 43, 31 S.Ct. 136, 138, 55 L.Ed. 78. Here, the inference of the railroad's negligence was at an end when the evidence introduced by appellees rebutted the only charge of negligence upon which they relied.

Consequently, the matter was not for submission to the jury but should have been disposed of by the court by an instructed verdict. It was error to refuse to direct a verdict for appellant and because of that error, the judgment of the District Court is reversed and judgment is here rendered for appellant.

Reversed and rendered.

2. See Atlantic Coast Line Railroad Co. v. Thomas, 83 Ga.App. 477, 64 S.E.2d 301, 318.