## McKINNEY *v.* CARMACK.

<div style="float:right">119  467<br>f125  138</div>

Turner, J.   1. For the purpose of impeaching a witness, his testimony on the commitment trial of one accused of a felony may be proved as well by a person who heard it as by the notes or memoranda of the evidence taken by the court.    *Brown* v. *State,* 76 *Ga.* 623.    The same rule will apply in the case of a coroner's report of the substance of the testimony delivered before him at an inquest.

2. As a general rule, evidence of threats previously made by one who is killed by another, but uncommunicated to the latter, are not admissible on the trial of a case involving the question whether or not the slayer was justified in taking the life of the deceased ; but when the evidence tends to show that the person killed began the mortal conflict and that the slayer killed his adversary in self-defense, proof of threats of this character may be received to show the state of mind or feeling on the part of the deceased, and thus illustrate his conduct and throw light upon his intention and purpose at the time of the fatal rencontre.    *May* v. *State,* 90 *Ga.* 797, and cases therein cited and reviewed.

3. The court below committed no material error in charging, or in failing or in refusing to charge, as to the law touching the issues on which the jury were called on to pass ; and there was evidence which warranted their verdict.

*Judgment affirmed.    All the Justices concur, except Simmons, C. J., absent.*

Argued January 22, — Decided February 12, 1904.

Action for damages.    Before Judge Henderson.    City court of Vienna.    September 2, 1903.

Mrs. McKinney sued Carmack for damages resulting to her from the homicide of her husband; contending that on September 3, 1902, Carmack went to McKinney's home where he was quietly resting, lured him therefrom, and with malice aforethought shot him to death.    There was some conflict of evidence; but that for the defendant tended to prove the following: McKinney had been Carmack's cropper, working on halves, and, recently before the day of the homicide, had sold a bale of cotton.    On that day Carmack went to see McKinney about a settlement for the bale so sold; and upon his stating this object, McKinney paid him half of what the bale was sold for, less a few cents.    Carmack called attention to this difference, said it would come all right on the next sale of cotton, and started to leave.    McKinney (who had drunk some intoxicating liquor) then manifested a disposition to quarrel, and followed Carmack into the road, where he shook his finger at Carmack and said, "You and your brother and your mammy and your sisters have all told g— d— lies." Thereupon Carmack struck McKinney with his fist, and McKinney drew a pistol, which Carmack caught hold of as it was discharged, receiving a slight wound in the hand.    This caused him to loose his hold on the weapon, and McKinney again fired at him without effect.    Carmack pulled out his own pistol, and as he did so McKinney shot him in the body, inflicting a serious wound. Then Carmack shot McKinney five times, as quickly as he could, and ran off, McKinney firing another shot at him as he ran. Within about an hour McKinney died of the wounds he had received.    The verdict was for the defendant, and the plaintiff excepted to the denial of her motion for a new trial.    This motion sets forth, besides the general grounds, that the court erred as follows:

1.    In allowing two witnesses to testify to statements made by Mrs. McKinney in her testimony at the coroner's inquest (setting forth their testimony), contradictory of some of her testimony on the trial of the present case, over objection that, it appearing that the testimony at the inquest was taken down, the writing was better evidence of what any witness testified on that occasion, and that parol evidence was inadmissible unless the loss or destruction of the written evidence was shown according to law.    There was testimony by the clerk of the superior court, and by another

witness, to the effect that some papers relating to the inquest had once been placed in the clerk's office and were afterward turned over to the grand jury, and had been lost, and, after search for them, could not be found.

2. In allowing a witness to testify, over objection, that, three or four days before the homicide, he asked McKinney what sort of a man Carmack was to work with, and said he had a notion to go and trade with Carmack; and that McKinney answered that the witness might trade with Carmack's wife, but not with Carmack, because he was going to kill Carmack. The objection was, that this was inadmissible unless the threat was communicated to Carmack, and that the words were not of such recent nature as to be admitted to show the state of mind of the deceased.

3. In charging the jury: "If you believe that Mr. McKinney invited Carmack, or caught him by the coat and carried him down there, and if you believe that the deceased, Mr. McKinney, used opprobrious words to Carmack, then McKinney would be bound to anticipate that Carmack would resent such, but in a manner commensurate with the words used; and if Carmack assaulted McKinney, then McKinney would not have been authorized to take the life of Carmack,"—without instructing the jury anywhere in the charge as to what character of assault opprobrious words would justify, or without telling them that if the assault was of such a character as to excite the fears of a reasonable man, then McKinney would have been justified in taking the life of Carmack. And in failing to limit the extent of the assault in response to opprobrious words, inasmuch as an assault can be made with a deadly weapon, which would excite the fears of a reasonable man and justify the killing of the person making the assault. (In this connection the court also charged, "that, on the other hand, . . if the conduct of Carmack provoked an assault from the deceased McKinney; which the defendant might have been justified in resenting, or the result of which provoked the deceased to an act which made it necessary for the defendant to take the life of the deceased in order to save that of himself, the defendant would not be justifiable, and you would have to find for the plaintiff.")

Also, in charging: "It is for you, gentlemen of the jury, to say what these words were, and whether or not they would jus-

tify a battery." This was prejudicial to the plaintiff, for the reason that in the former part of the same paragraph, while charging as to opprobrious words, the court used the word "assault," and in this connection used the word "battery," which was confusing to the jury in the consideration of what either Carmack or McKinney could do in response to opprobrious words, — whether they could respond with an assault or a battery; especially as the court nowhere in its charge defined an assault or a battery. And the charge was error for the further reason that the court failed in the same connection to instruct the jury that the use of opprobrious words, in a civil case like this, is not a justification for either an assault or a battery responsive thereto, but can only go in mitigation of damages.

Also, in charging: "If you believe, from a preponderance of the evidence, that the defendant was guilty, under the law, of either murder or manslaughter, then you will have to find for the plaintiff, and not believe him guilty beyond a reasonable doubt. . . If you believe, from the rules of law that I have given you in charge, that the defendant in this case, under the law, would have been guilty either of the charge of murder or of manslaughter, you would be obliged to find for the plaintiff." This was prejudicial to the plaintiff, for the reason that it limited her recovery to affirmative proof by her that the defendant was guilty of murder or of voluntary manslaughter. The court nowhere instructed the jury as to the law of involuntary manslaughter, although it was involved in the case under the facts.

Also, in refusing a request to charge thus: "If upon a sudden heat of passion two fall out and fight with deadly weapons upon equal terms, and one is slain, it is manslaughter."

*Crum & Jones* and *R. L. Berner*, for plaintiff, cited *Ga. R.* 92/605; 89/140; 30/72; 95/343; 116/954; 118/885.

*Hall & George* and *Busbee & Busbee*, for defendant, cited, on admission of evidence; *Ga. R.* 65/139; 76/623; 109/526; 18/194; 88/739; 90/793. On charge to jury: Penal Code, §§ 70, 73, 103; *Ga. R.* 92/16; 96/436; 25/527; 70/736; 30/67.