26327. SOUTHERN RAILWAY COMPANY v. RILEY.
26328. SOUTHERN RAILWAY COMPANY v. SANDERS.

DECIDED DECEMBER 4, 1937. REHEARING DENIED DECEMBER 15, 1937.

*Harris, Harris, Russell & Weaver, E. L. Reagan, Brown & Brown,* for plaintiff in error.

*Arnold, Gambrell & Arnold, Ernest M. Smith,* contra.

STEPHENS, P. J. 1. Where a railroad company through its agents, in the operation of its train, fails to blow the engine whistle at a blow-post as required by law, and one driving an automobile and approaching the crossing, or another in the automobile, who is not negligent in not knowing of the presence of the train on said crossing, is injured by the running of the automobile into the train which is passing over the crossing, it can not be said as a matter of law that the failure of the railroad company to blow the whistle is not the proximate cause of the injuries.

2. Where a railroad crossing is so situated that travelers in automobiles at night along the public road when approaching the crossing can not see the crossing, or a train passing on the crossing, until after turning a curve in the highway approaching the crossing and coming within ten or fifteen yards of the crossing, and, by reason of an embankment and other obstructions between the traveler and a train approaching the crossing,

can not see the train, but where travelers in approaching the crossing could hear a whistle of a train approaching if a whistle is blown, and then become aware of the approach of a train to the crossing, it may be inferred that the failure of the railroad company through its agents in the operation of the train approaching the crossing, in failing to blow the whistle, is negligence as respects a traveler in an automobile along the road at night, who could hear the train whistle if a whistle is blown, and who without knowledge of the approach of the train runs into it on the crossing and is injured.

3. Where a paved highway which runs parallel with a railroad-track makes a decided curve to the right and crosses the railroad-track at a public crossing, and where a train passing over the crossing can not be observed by a traveler along the highway in an automobile at night until the automobile has proceeded around the curve so as to throw the lights of the automobile on the train and when the automobile is within ten or fifteen yards of the train, it may be inferred that the railroad company is negligent as respects such a traveler in permitting to remain for ten or twelve hours, on the ground where it had fallen, a sign which the railroad company had erected on the left or east side of the paved highway and southeast of the crossing before the highway reached the railroad crossing, which sign consisted of two white slabs four or five feet in length joined crosswise.

4. There being no obligation by law resting on the railroad company to have on the side of the public road adjacent or near the railroad tracks any warning sign or metal substance which would reflect the lights of an approaching automobile and warn the driver of the danger of the presence of the railroad crossing, it is not negligence on the part of the defendant railroad company to fail to have erected such sign.

5. The failure of the railroad company to provide lights on the side of the cars of the train as it passes over a crossing is not negligence.

6. The allegations in the petitions that the plaintiffs "were near enough to have heard" the blowing of the whistle of the locomotive, had it been blown when the locomotive came within four hundred yards of the crossing, were allegations of fact and

not mere allegations of conclusions of the pleader. These allegations were not subject to demurrer on the ground that there was not alleged the relative position of the locomotive and the automobile in which the plaintiffs were riding at the time when it is contended the whistle should have been sounded, and in that there was not alleged the distance of the automobile from the crossing when the locomotive of the train reached the blow-post, or the distance of the automobile from the crossing when the locomotive of the train reached the crossing. The allegations as to the speed at which the automobile was traveling in approaching the railroad crossing, which was about thirty-five miles per hour, that the train passing over the crossing was a slow-moving freight-train, and that the automobile in which the plaintiff was riding collided with the thirty-sixth car of the train, contained sufficient data from which the jury could estimate the distance of the automobile from the crossing when the locomotive reached the blow-post, or the distance of the automobile from the crossing when the locomotive of the train reached the crossing, and whether the distance of the automobile from the train when the locomotive reached the blow-post was the distance within which a person in the automobile could hear the sound of the whistle if one had been sounded at the blow-post.

7. A person operating an automobile, or one traveling in an automobile at night along a public road, under the conditions narrated above, where the automobile was properly equipped with the required lights, and where the person operating the automobile, and also the one traveling in the automobile, were unfamiliar with the locality, and, by reason of the obstructions ahead on the left of the roadway between the road and the railroad-track, could not see the train which was passing on the track, and where no warning of the approach, or the presence on the crossing of a train had been given to such persons approaching the crossing, and where such persons did not know of the existence of the railroad crossing or of the train passing over the crossing until after the automobile had turned the curve and got within about ten yards of the moving train on the crossing, when the driver of the automobile immediately turned to the left to avoid running into the train, and immediately applied the brakes and did not have time to bring the automobile to a

stop, and could not bring it to a stop before colliding with the train, it does not appear as a matter of law that either the driver of the automobile, or the person riding in the automobile, was guilty of any negligent conduct which proximately contributed towards any injuries to the driver of the automobile, or the person riding therein, caused by the collision between the automobile and the train.

8. The petitions in the case of the driver of the automobile and in the case of the mother of a minor child who was a passenger in the automobile, in which it is alleged that the driver was injured and the child was killed by reason of the automobile's colliding with the train which was passing over the crossing, set out causes of action and were good against general demurrer, and good as against all the special demurrers except the demurrers directed to the allegation of negligence based upon the alleged failure of the defendant railroad company to have a metal reflector sign on the side of the highway near the crossing and to have lights on the side of the train while it was passing over the crossing.

*Judgment in each case affirmed, with direction that it be so modified as to sustain the special demurrers to the allegations of negligence last referred to. Sutton and Felton, JJ., concur.*

ON MOTION FOR REHEARING.

A motion for rehearing is made by the plaintiff in error, Southern Railway Company, in both of these cases, on the ground that this court in the decision rendered overlooked the case of *Central of Georgia Railway Co.* v. *Adams,* 39 *Ga. App.* 577 (147 S. E. 802). It is contended that under the authority of that case it appears from the allegations in the petitions in the cases now before the court that the negligence of the operator of the automobile, and not the negligence of the defendant railway company, was the proximate cause of the injuries complained of by both plaintiffs. While this court in the opinion did not expressly refer to the *Adams* case, and did not expressly refer to any other decided case, the opinion was written after a careful consideration not only of the *Adams* case but of the cases of *Central of Georgia Ry. Co.* v. *Heard,* 36 *Ga. App.* 332 (136 S. E. 533), and *Gay* v. *Smith,* 51 *Ga. App.* 615 (181 S. E. 129). The *Adams* case, in so far as it has reference to the negligence of the plaintiff, whose

negligence it was held in that case barred a recovery, is distinguishable from the cases now before the court. In the *Adams* case, as stated by the court, it "could not be fairly concluded that the petitioner was entirely unfamiliar with the road he was traversing," while in the cases now before the court it appears from the allegations of the petitions that the driver of the automobile, who was the plaintiff in one of the cases, was not familiar with the road and did not know of the existence of the railroad crossing. It also appears in the *Adams* case, aside from any knowledge which the plaintiff may have had respecting the road, that, since the plaintiff was operating his automobile at a speed not exceeding twenty-five miles an hour on a dark, foggy, and misty night, and could not, with the headlights of his automobile "burning properly," see a train of cars immediately in front of him at a greater distance than "about twenty feet," and when he observed the train of cars he immediately applied good brakes to his automobile and turned to the left, but the momentum of the automobile was so great that it struck the side of the freight-car and caused the damage complained of, it appeared as a matter of law that the plaintiff was guilty of negligence, unmixed with any negligence of the defendant, proximately causing the injury. It must be taken that the plaintiff in that case knew of the dark, foggy, and misty condition, and knew that he could not see an object in front of him greater than a distance of about twenty feet. Properly construing the *Adams* case, it was held that under such conditions the plaintiff was guilty of negligence barring a recovery in operating his automobile at such a speed through the fog and mist that he could not stop it on the immediate application of good brakes after actually observing the train of cars in front of him. In the cases now before the court it does not appear that there was any mist or fog which would reduce the driver's range of vision. Nor does it appear that the driver had knowledge of any obstructed view of the railroad-track or of a train approaching on it below the crossing. It merely appears from the petitions that from the lay of the land such view of the driver was obstructed. The opinion in the *Adams* case was not unanimous. One of the Judges dissented.

Irrespective of the *Adams* case, which, as has been stated, was rendered by a divided court, the conclusion in the cases now

before the court is sustained by the decisions in *Central of Georgia Ry. Co.* v. *Heard,* and *Gay* v. *Smith,* supra. In both of those cases it appeared that the automobile was being operated in a fog, which necessarily curtailed the vision of the operator. In one case the automobile was proceeding at about thirty miles an hour, and in the other case the automobile was being operated at a speed not exceeding fifteen miles an hour. In each case the operator of the automobile ran into a train which was on a crossing. In neither case was the operator aware of the existence of the crossing. In the case in which the automobile was being operated not exceeding fifteen miles per hour, the operator did not see the train on the crossing until he was not more than ten feet distant therefrom. In both of these cases it was held that the operator of the automobile was not guilty of negligence barring a recovery. This court adheres to the conclusion reached in the original opinion, that it appears from the allegations of both petitions that the injuries complained of were proximately caused by the negligence of the defendant railroad company, and not by the negligence of the operator of the automobile, or that of the other person riding in the automobile.

*Rehearing denied.*